John R. Tenney, J.
Petitioner, Baker/Beech-Nut Corporation, brings this proceeding to prohibit the respondent from taking certain investigatory actions. Respondent, representing the Consumer Affairs Unit of the City of Syracuse, denies the allegations of the petition.
The dispute arises over a letter sent to 760,000 mothers throughout the United States, including some in the City of Syracuse. Respondent has issued a subpoena and scheduled a hearing into alleged violations of the Consumer Protection Code of the City of Syracuse. Petitioner contends respondent has no jurisdiction.
Before considering the merits of the arguments, several factors should be considered. This matter has become a much publicized cause in the Syracuse area. Respondent has issued statements to the news media, made charges and presented proof from various "authorities”. In fact, the whole subject has been thoroughly aired before the public. There is little or nothing to be added to the record. It is hard to conceive of any public benefit to be derived through utilization of the legal process at this late date.
Respondent is a public official in charge of a public institution. As such, she is required to proceed in a legal manner. It is most inappropriate for a public official, especially when claiming quasi-penal powers, to charge and prosecute someone within her potential jurisdiction, without utilizing the legal process. The judicial process should not be bypassed no matter how noble the objective.
The foregoing should in no way indicate that the court takes a position on the merits of the respective claims of the parties. It merely constitutes an observation objecting to the method of procedure.
*258 Respondent apparently started to investigate the contents of the letter when it was brought to her attention. Before petitioner was afforded a reasonable opportunity to respond to petitioner’s inquiries, a public relations campaign was commenced denouncing the company as author of the letter. While ostensibly continuing its investigating, a further news release was issued criticizing the company for raising a legal objection to the investigation. Finally, after arguments had been heard before this court, an official "Consumer Affairs Newsletter” was circulated. This newsletter contained an article which criticized the Beech-Nut "flyer” and spoke of the "unwarranted apprehension” it caused. It also spoke of an action to require the company to comply — "this time without the cents-off coupons that accompanied the first flyer”.
From these actions, it is difficult to conclude that respondent has any real regard for petitioner’s rights or the due process of law. For this reason alone, the subpoena should be quashed, and the respondent restrained from taking any further action.
The subject of the authority of a Consumer Affairs Unit to issue subpoenas is thoroughly discussed in Myerson v Lentini Moving & Stor. Co. (33 NY2d 250). The court stated at page 258: "All that is required is that the scope of the subpoena and the basis for its issuance be more than isolated or rare complaints by disgruntled customers, lest the powers of investigation, especially in local agencies, become potential instruments of abuse and harassment.”
Assuming that the agency has the power to subpoena to investigate alleged violations, does it have the power to subpoena for the purpose of punishment as it indicates it intends by its public statements? Since the agency has already concluded the existence of a violation, the purpose of its subpoena is suspect.
As the court concluded in the Lentini case at page 260: "Less of a showing [of materiality and relevancy] should be required for a preliminary or tentative inquiry, and more for one that might otherwise be causelessly broadened into an unlimited examination of the business affairs of an enterprise”.
This proceeding apparently arose from an isolated complaint from a Syracuse resident despite the fact that the letter was mailed throughout the United States. There seems to be little basis to respondent’s action related to the Syracuse area. *259 Since the purpose of the Syracuse Consumer Protection Code is for the "health, safety and well-being of consumers of the City of Syracuse”, the Consumer Affairs Unit should limit its activities to problems within its area.
In any event, it is conceded that the subpoena was served outside the City of Syracuse. There is no statutory authority to serve a subpoena outside the area of jurisdiction of the administrative agency. See for a discussion of the subject: Israel Discount Bank v P. S. Prods. Corp. (65 Misc 2d 1002) and Siemens & Halske v Gres (37 AD2d 768). Thus, the attempted service in Canajoharie is a nullity.
It serves little purpose to conduct hearings in Syracuse over an issue which may properly be the province of the State or even the Federal Government. Since the alleged conduct of the petitioner has a broader influence than the City of Syracuse, inquiry should not originate at such an isolated point. The same process could be repeated at numerous locations. Exposing petitioner to a multiplicity of legal proceedings is contrary to our concept of justice and could constitute unwarranted harassment. The State of New York has established appropriate procedures for handling such matters. Respondent may apply for assistance to the Consumer Protection Board of the State of New York. (Executive Law, § 553, subd 3, par c.)
Therefore, petitioner’s motion is granted as follows:
1. The subpoena is quashed in all respects.
2. The respondent is ordered to cease any further investigatory action with reference to petitioner. However, respondent may proceed under the appropriate sections of the Executive Law within the limitations established by this decision.