OPINION OF THE COURT
William J. Quinn, J.
Charles J. Hynes, Deputy Attorney-General of the State of New York (hereinafter called the "Special Prosecutor”), by subpoena and order of this court, seeks the appearance of one Hazel Pregent at the office of the Special Prosecutor, as a witness in an inquiry into nursing homes, care centers, health facilities and related entities in the State of New York, and to give handwriting exemplars of specific writings, for compari *15 son purposes. Applicant herein, said Hazel Pregent, by order to show cause, seeks to quash the above-mentioned subpoena, alleging harassment and an improper extension of the subpoena power of the Special Prosecutor.
On May 1, 1978, Hazel Pregent, then director of nursing at the Franklin County Nursing Home at Malone, New York, was suspended due to allegations of misconduct; and in June of 1978, an investigation was commenced by the office of the Special Prosecutor, pursuant to subdivision 8 of section 63 of the Executive Law of the State of New York, into those allegations of misconduct. The subpoena which is the subject matter of this instant proceeding was issued in the course of this said investigation.
On June 27, 1978, Hazel Pregent appeared with counsel at a hearing, pursuant to subpoena, and responded to questions asked of her by the office of the Special Prosecutor; and she further voluntarily gave, upon request, a number of handwriting specimens.
The Special Prosecutor contends that as the investigation continued, questions arose as to the authorship, alteration and/or modification of a number of patient medical files regarding both current and former patients at the Franklin County Nursing Home. These files consist in large part of entries concerning patient condition, progress and treatment. Said entries were made in the technical terms, phrases and abbreviations normally used by medical personnel; and said files further contained names and descriptions of drugs and medications allegedly prescribed and administered.
An examiner of the questioned documents, retained by the office of the Special Prosecutor, has requested known samples of handwriting, for the purpose of comparison with those entries above described which are of questionable authorship or apparent alteration and/or modification. The Special Prosecutor maintains that these additional handwriting exemplars must necessarily be in identical or similar medical technical terms, phrases and abbreviations.
The present language of subdivision 8 of section 63 of the Executive Law, effective July 19, 1977, as pertains to investigations under the statute, provides, in part: "The Attorney General, his deputy, or other officer, designated by him, is empowered to subpoena witnesses, compel their attendance, examine them under oath before himself or a magistrate and require that any books, records, documents or papers relevant *16 or material to the inquiry be turned over to him for inspection, examination or audit, pursuant to the civil practice law and rules.” Applicant herein, Hazel Pregent, argues that the foregoing statute was specifically amended to incorporate desired "evidentiary” changes pertaining to inspection, examination or audit of books, records, documents or papers; and that no mention is made of any authority which might, even arguably, be construed as authorizing compulsory handwriting exemplars production.
Upon review of the papers herein submitted, and having heard argument of counsel for the respective parties herein, it is the opinion of this court that the issue before it differs drastically from the reported Federal and New York State cases on the subject of handwriting exemplars. The Special Prosecutor, citing prior case law in this area, has relied heavily on Schmerber v California (384 US 757) and United States v Dionisio (410 US 1) wherein the court has stated that handwriting is merely a display of an identifiable physical characteristic. The Supreme Court has held in both cases above cited that handwriting specimens, like fingerprints, are identifying physical characteristics, and do not violate the Fourth, Fifth or Fourteenth constitutional Amendments provisions.
However, this court does not agree with the above, given the particular circumstances existing in the instant proceeding. The witness here has already voluntarily exhibited the necessary identifiable physical characteristics, and here, the Special Prosecutor seeks more. He seeks the content of what is written. See Gilbert v California (388 US 263, 266-267), wherein the court, dealing with handwriting exemplars and Fifth Amendment privilege, stated: "It by no means follows, however, that every compulsion of an accused to * * * write compels a communication within the cover of the privilege. A mere handwriting exemplar, in contrast to the content of what is written * * * is an identifying physical characteristic outside its protection.” The Special Prosecutor’s request in this case seeks "content” within the context of the extant circumstances. The data requested and the manner in which it is sought, being a second specific writing, is, in the opinion of this court, de facto violative of due process, and is tantamount to a compulsion to provide prejudicial, self incriminating evidence. Furthermore, were the Special Prosecutor to have convened a Grand Jury and sought therein the specific hand *17 writing specimens of said Hazel Pregent under a criminal proceeding, the immunity safeguards would have been available to the witness. The Special Prosecutor should not be permitted to evade this statutory safeguard.
Upon all of the above, it is this court’s decision that the subpoena of the Special Prosecutor compelling a second offering of specific handwriting exemplars extends beyond the subpoena power of an office subpoena, and must be quashed.
The prayer of applicant, Hazel Pregent, to quash the subpoena herein, is granted; and said applicant is to submit a proposed order to that effect.